# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES DOSS WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 4:11CV1171 LMB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision

denying the application of James Doss Williams for Disability Insurance Benefits under Title II of

the Social Security Act, and Supplemental Security Income under Title XVI of the Act.  This case

has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice

Reform Act and is being heard by consent of the parties.  See 28 U.S.C. § 636(c).  Plaintiff filed a

Brief in support of the Complaint.  (Doc. No. 13).  Defendant filed a Brief in Support of the

Answer.  (Doc. No. 14).  Plaintiff has filed a Reply.  (Doc. No. 15).

## Procedural History

On March 13, 2007, plaintiff filed his application for benefits, claiming that he became

unable to work due to his disabling condition on June 19, 2005.  (Tr. 47, 81-93).  This claim was

denied initially, and following an administrative hearing, plaintiff's claim was denied in a written

opinion by an Administrative Law Judge (ALJ), dated August 5, 2009.  (Tr. 55-59, 47-54).

Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the

Social Security Administration (SSA). (Tr. 13-15). On May 3, 2011, the Appeals Council granted plaintiff's request for further review, but still found that plaintiff was not disabled. (Tr. 1-7). The Appeals Council found that plaintiff had severe impairments, but concluded that plaintiff could perform medium work, with additional restrictions in climbing and reaching. (Tr. 6). The Appeals Council relied on the medical-vocational guidelines to conclude that plaintiff could perform other jobs in the national economy and was not, therefore, disabled. (Id.). Thus, the decision of the Appeals Council stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

### A.    ALJ Hearing

Plaintiff's administrative hearing was held on February 12, 2009. (Tr. 18). Plaintiff was present and was unrepresented. (Id.). Plaintiff indicated that he understood that he had a right to representation, and that he wished to proceed without a representative. (Tr. 20).

The ALJ examined plaintiff, who testified that he had not received any treatment that was not included in his file. (Tr. 22).

Plaintiff stated that he was forty-six years of age, and was divorced. (Id.). Plaintiff testified that he lived alone in a mobile home on his mother's property. (Id.). Plaintiff stated that he had lived alone since 1985. (Tr. 23). Plaintiff testified that his home was located approximately eight miles outside of town. (Id.).

Plaintiff stated that he completed twelfth grade, and attended regular classes when he was in school. (Id.). Plaintiff testified that he took one college course in commercial electricity. (Tr. 24). Plaintiff stated that he was able to read and write, and was able to perform basic arithmetic.

(<u>Id.</u>).

Plaintiff testified that he was five-feet, seven-inches tall, and weighed 120 pounds.  (<u>Id.</u>).  Plaintiff stated that he was right-hand dominant.  (Tr. 25).

Plaintiff testified that he served active duty in the Army from 1983 to 1986, and in the Army Reserves from 1986 to 1992.  (<u>Id.</u>).  Plaintiff stated that he was honorably discharged.  (<u>Id.</u>).

Plaintiff testified that he was not working at the time of the hearing.  (<u>Id.</u>).  Plaintiff stated that he last worked two years prior to the hearing at Heartland Box Company in Belle, Missouri.  (<u>Id.</u>).  Plaintiff testified that he worked as a maintenance supervisor at this position.  (Tr. 26).  Plaintiff stated that he worked at this position approximately seven years.  (Tr. 26).  Plaintiff testified that he spent a lot of time standing, walking, and lifting at this position.  (<u>Id.</u>).  Plaintiff stated that he was required to lift fifty to sixty pounds.  (<u>Id.</u>).  Plaintiff testified that he left this position because he was unable to perform the work due to his injuries.  (Tr. 27).

Plaintiff stated that he worked as a laborer and operator for an excavating company for twelve years.  (Tr. 27).  Plaintiff testified that this position ended when the company closed.  (<u>Id.</u>).  Plaintiff stated that he was required to lift significant amounts at this position.  (<u>Id.</u>).

Plaintiff testified that his worst problem was the pain in his lower back, hip, and joints.  (Tr. 28).  Plaintiff stated that his lower back pain was located in the very lower portion of his back where it connects with his pelvis.  (<u>Id.</u>).  Plaintiff stated that four of his vertebrae have been crushed.  (<u>Id.</u>).  Plaintiff testified that his pain went up his entire back.  (<u>Id.</u>).  Plaintiff stated that he had difficulty sleeping due to his low back pain.  (<u>Id.</u>).  Plaintiff testified that he also experienced difficulty lifting and moving around.  (<u>Id.</u>).  Plaintiff stated that his back pain had

worsened over the past four years. (Tr. 29). Plaintiff testified that his pain was constant. (Id.). Plaintiff stated that his back pain was usually a five to six on a scale of one to ten. (Tr. 30).

Plaintiff testified that he was no longer taking any pain medication because he was allergic to most medications. (Id.). Plaintiff stated that he broke out in hives when he took medication. (Id.).

Plaintiff testified that he experienced pain in his right hip, which was related to his back pain. (Id.). Plaintiff stated that his right leg was shorter than his left leg, which put stress on his leg. (Id.). Plaintiff testified that his hip pain was also a five to six on a scale of one to ten. (Id.).

Plaintiff stated that he experienced joint pain in his fingers, elbows, and shoulders. (Tr. 31). Plaintiff testified that the severity of this pain varied. (Id.). Plaintiff stated that his level of activity and the weather both affected his joint pain. (Id.). Plaintiff testified that this pain was usually a three on a scale of one to ten. (Id.).

Plaintiff stated that he had been receiving all of his medical treatment at the Truman clinic. (Tr. 32).

Plaintiff testified that, on a typical day, he stays at home and tries to move around the best he can. (Tr. 33). Plaintiff stated that he is able to perform housework in his trailer if he paces himself. (Id.). Plaintiff testified that he cooks. (Id.). Plaintiff stated that his nephews help him with yard work. (Id.). Plaintiff testified that he is able to sweep and vacuum most of the time. (Id.). Plaintiff stated that his mother usually shops for him. (Tr. 34).

Plaintiff testified that he enjoyed fishing on the bank, and that he was able to fish about once a week in the summer at a nearby lake. (Id.). Plaintiff stated that he visited with friends "maybe a couple of times a week." (Id.). Plaintiff testified that his friends invited him over for

dinner, and they sit and talk. (Tr. 35).

Plaintiff stated that he had difficulty sleeping because he woke up with severe lower back pain and was unable to fall back asleep. (Id.). Plaintiff testified that he typically slept approximately six hours a night. (Id.). Plaintiff stated that he rested during the day approximately three days a week. (Tr. 36). Plaintiff testified that he did not usually sleep, but just lies down for no more than one hour. (Id.).

Plaintiff stated that he was able to lift five pounds comfortably. (Id.). Plaintiff testified that he had difficulty walking, but tried to walk as much as he could. (Id.). Plaintiff stated that he was able to walk about one quarter of a mile on level ground before he would have to take a break due to hip pain. (Tr. 37). Plaintiff testified that he was able to stand in place for about ten minutes before he had to move due to back pain. (Tr. 37-38). Plaintiff stated that he was able to sit for a few minute before he had to get up and move around due to back pain. (Tr. 38). Plaintiff testified that his most comfortable position was a combination of sitting and standing. (Id.). Plaintiff stated that he had difficulty bending due to back stiffness and pain. (Id.). Plaintiff testified that he did not have much difficulty with climbing stairs. (Tr. 39).

Plaintiff testified that he had recently been diagnosed with COPD,[1] and was taking breathing treatments. (Id.). Plaintiff stated that he had experienced difficulty breathing for "quite some time," but was just diagnosed with COPD a few months prior to the hearing. (Id.). Plaintiff testified that his COPD was unrelated to his rib injuries. (Id.). Plaintiff stated that his ribs had

---

[1]Chronic obstructive pulmonary disease ("COPD") is a general term used for those diseases with permanent or temporary narrowing of the small bronchi, in which forced expiratory flow is slowed, especially when no etiologic or other more specific term can be applied. Stedman's Medical Dictionary, 554 (28th Ed. 2006).

healed.  (Id.).

## B.    Relevant Medical Records

The record reveals that plaintiff presented to Missouri Baptist Hospital on February 28, 2007, with complaints of right-sided chest pain after falling off of a ladder.  (Tr. 180).  Plaintiff was diagnosed with rib fractures on the right involving T4[2] to T9, and a small pneumothorax.[3] (Id.).  Plaintiff was also diagnosed with cigarette abuse, osteoporosis,[4] and bronchitis.[5]  (Tr. 164). Plaintiff underwent a right tube thoracostomy[6] on March 5, 2007, which resolved the pneumothorax.  (Tr. 182).  On March 6, 2007, the chest tube was removed, and plaintiff was discharged.  (Tr. 154).

Plaintiff received treatment at the Harry S. Truman Memorial Veterans Hospital ("VA") from November 2007 through August 2008.  (Tr. 207-50).  Plaintiff presented to the VA on November 29, 2007, with complaints of persistent pain in his elbows and hands.  (Tr. 208).  It was noted that plaintiff had been diagnosed with osteoporosis four to five years prior.  (Tr. 213-14).  Plaintiff reported that he smoked one-and-one-half packages of cigarettes a day since his

---

[2]In common terms, the cervical region of the spinal column is the neck; the thoracic region is the main part of the back; and the lumbar region is the lower back.  There are seven cervical vertebrae, twelve thoracic vertebrae, and five lumbar vertebrae.  The sacrum lies directly below the fifth lumbar vertebra.  The coccyx, or tail bone, lies below the sacrum.  See Medical Information Systems for Lawyers, § 6:27.

[3]The presence of free air or gas in the pleural cavity.  Stedman's at 1526.

[4]Reduction in the quantity of bone or atrophy of skeletal tissue; an age-related disorder characterized by decreased bone mass and loss of normal skeletal microarchitecture, leading to increased susceptibility to fractures.  Stedman's at 1391.

[5]Inflammation of the mucous membrane of the bronchi.  Stedman's at 270.

[6]Establishment of an opening into the chest cavity for drainage.  Stedman's at 1982.

teenage years, and that he drank heavily in the past. (Tr. 214). Plaintiff was diagnosed with premature osteoporosis, which was a probable combination of genetic factors and previous alcohol excess. (Id.). A nurse practitioner diagnosed plaintiff with right hip pain, low back pain, osteoporosis, COPD, right heel pain, allergies, right elbow pain, and tobacco abuse. (Tr. 240).

Plaintiff underwent bone density testing in December 2007, which revealed osteoporosis in the lumbar spine and left hip. (Tr. 219).

Plaintiff underwent x-rays of the elbow, which was normal. (Tr. 220).

Plaintiff underwent x-rays of the lumbosacral spine and right hip, due to complaints of increased back and hip pain in December 2007. (Tr. 220-21). X-rays of the lumbosacral spine revealed a decrease in the height of the L5 vertebral body, which suggested possible old trauma. (Tr. 221). X-rays of plaintiff's right hip were negative. (Id.).

Plaintiff underwent chest x-rays in December 2007, due to complaints of increased cough. (Tr. 222). The x-rays revealed changes of hyperaeration.[7] (Id.).

Plaintiff presented to the VA on February 26, 2008, for follow-up of his chronic problems. (Tr. 232-33). It was noted that plaintiff refused to quit drinking and smoking. (Tr. 233). Plaintiff reported that he only took the Fosamax[8] one time because he felt bad and blamed the medication. (Id.). Plaintiff complained of a cough and back pain. (Id.). Plaintiff reported that he was unable to tolerate Tylenol or non-steroidal anti-inflammatory drugs due to hives. (Id.). Plaintiff was diagnosed with osteoporosis, COPD, allergies, back pain, and tobacco use disorder. (Tr. 234).

---

[7]Excess air in the lungs. See Stedman's at 33.

[8]Fosamax is indicated for the treatment of osteoporosis. See Physician's Desk Reference, ("PDR"), 2008 (63rd Ed. 2009).

Plaintiff was advised to resume the Fosamax for treatment of his osteoporosis; start Combivent[9] and quit smoking for his COPD; use heat/ice for his back pain; and stop drinking. (Tr. 234).

Plaintiff presented for follow-up on May 14, 2008, and June 18, 2008, at which time he continued to complain of persistent joint pains. (Tr. 229). Plaintiff was diagnosed with osteoporosis, which was probably a combination of his small build and previous alcohol excess. (Id.). A rheumatology consult was recommended. (Id.).

Plaintiff underwent a rheumatology consult at the VA on July 31, 2008, for evaluation of his chronic joint pain. (Tr. 246-48). Plaintiff's past medical history was significant for COPD, osteoporosis, and multiple compression fractures. (Tr. 247). Plaintiff reported that he smoked one-and-one-half packages of cigarettes a day for the past thirty years, and that he drank about six beers a week, although he used to drink a case every day. (Id.). Upon examination, plaintiff had slight pain over the lateral epicondyle[10] of both elbows. (Tr. 248). Plaintiff had full strength in the upper and lower limbs bilaterally. (Id.). It was noted that plaintiff had complaints of cough and shortness of breath. (Tr. 247). Plaintiff was diagnosed with osteoporosis secondary to alcohol consumption, smoking history, and small build; elbow tendonitis;[11] and back pain secondary to compression fractures and osteoarthritis. (Id.). Plaintiff was offered an elbow injection, but he refused, indicating that he preferred to use Tylenol at that time. (Id.).

Plaintiff presented to Bobby Enkvetchakul, M.D. for a consultative examination on March

---

[9]Combivent inhalation aerosol is indicated for the treatment of COPD. See PDR at 846.

[10]A projection from a long bone near the articular extremity above or upon the condyle. Stedman's at 653.

[11]Inflammation of a tendon. Stedman's at 1944.

9, 2009.  (Tr. 257-59).  Plaintiff complained of low back pain, right hip pain, and right elbow pain.  (Tr. 257).  Dr. Enkvetchakul noted that plaintiff had recently been diagnosed with COPD, and started using an inhaler.  (Id.).  Upon physical examination, plaintiff was five-feet seven-inches tall, and weighed 109 pounds.  (Id.).  Plaintiff rose from a seated position on his own power, and was able to get on and off the exam table without any assistance.  (Tr. 258).  Plaintiff displayed multiple pain behaviors during the examination.  (Id.).  Plaintiff ambulated with a slight limp favoring the right lower extremity.  (Id.).  Dr. Enkvetchakul diagnosed plaintiff with multiple diffuse joint pains, likely arthritic in nature.  (Id.).  Dr. Enkvetchakul stated that he was unable to find any significant evidence of severe pathology on examination, and that there was some evidence of symptom magnification.  (Id.).  Dr. Enkvetchakul noted that he found some limitation in range of motion, particularly at the right shoulder.  (Id.).  Dr. Enkvetchakul stated that he found little objective evidence for significant work restrictions.  (Id.).  He indicated that plaintiff would have some limitations with respect to the right shoulder based on his examination.  (Id.).  Dr. Enkvetchakul found that plaintiff could sit during a normal eight-hour workday with the usual breaks, and had no restrictions in standing, walking, or carrying.  (Id.).  Dr. Enkvetchakul indicated that it would be reasonable to limit plaintiff's work to chest level or lower secondary to his shoulder findings.  (Tr. 259).  Dr. Enkvetchakul stated that plaintiff was very thin and of slight build, so he was not sure that plaintiff could perform heavy manual labor, but found no medical reason why he could not try and do so.  (Id.).

Dr. Enkvetchakul completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical).  (Tr. 251-56).  Dr. Enkvetchakul expressed the opinion that plaintiff could continuously lift and carry twenty pounds, frequently lift and carry fifty pounds, and occasionally

lift and carry one hundred pounds. (Tr. 251). Dr. Enkvetchakul found that plaintiff had no limitations in his ability to sit, stand, or walk. (Tr. 252). Dr. Enkvetchakul checked a box indicating that plaintiff required the use of a cane to ambulate, although he did not complete the remainder of the accompanying form regarding plaintiff's use of a cane. (Id.). Dr. Enkvetchakul found that plaintiff should reach overhead with his right hand and climb ladders or scaffolds only occasionally. (Tr. 253).

### The ALJ's Determination

The ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.    The claimant has not engaged in substantial gainful activity since June 19, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: osteoarthritis and osteoporosis (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except with the need to use a cane for ambulation, and only occasional reaching overhead with the right upper extremity, and only occasional climbing of ladders or scaffolds.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on May 17, 1962, and was 43 years old, which is defined as a younger individual, age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in

English. (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue in this case because of the claimant's age and residual functional capacity (20 CFR 404.1568 and 416.968).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from June 19, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 49-54).

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability insurance benefits protectively filed on March 13, 2007, the claimant is not disabled under sections 216(I)      and 223(d) of the Social Security Act.

Based on the application for supplemental security income protectively filed on March 13, 2007, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 54).

## The Appeals Council's Determination

The Appeals Council made the following findings:

1.    The claimant met the special earnings requirements of the Act on June 19, 2005, the date the claimant stated he became unable to work and met them through December 31, 2010.

2.    The claimant has not engaged in substantial gainful activity since June 19, 2005, the alleged onset date.

3.    The claimant has the severe impairments of osteoarthritis and osteoporosis, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

4.    The claimant's combination of impairments results in the following limitations on

his ability to perform work-related activities: lifting 25 pounds occasionally and 50 pounds frequently, walking and standing 6 hours each out of an 8 hour workday, sitting without limitation, and only occasional reaching overhead with the right upper extremity, and only occasional climbing of ladders or scaffolds. In view of the above limitations, the claimant has the residual functional capacity to perform a reduced range of the medium exertional level.

5.      The claimant's subjective complaints are not fully credible for the reasons identified in the body of the Administrative Law Judge's decision.

6.      The claimant is not able to perform his past relevant work.

7.      The claimant is 48 years old, which is defined as a younger individual and has a high school education. The claimant's past relevant work is unskilled.

8.      If the claimant had the capacity to perform the full range of the medium exertional level, 20 CFR 404.1569 and 416.969 and Rule 203.28, Table No. 3 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled. Although the claimant's exertional and nonexertional impairments do not allow him to perform the full range of the medium exertional level, using the above-cited Rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform.

9.      The claimant is not disabled as defined in the Social Security Act at any time through the date of the ALJ's decision (August 5, 2009).

(Tr. 6).

The Appeals Council's final decision reads as follows:

Based on the application filed on March 13, 2007, the claimant is not entitled to or eligible for a period of disability or disability insurance benefits under sections 216(I) and 223, respectively, or Supplemental Security Income payments under sections 1602 and 1614(a)(3)(A) of the Social Security Act.

(Tr. 7).

## Discussion

### A.    Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to

the agency.  See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).  The decision of the SSA

will be affirmed if substantial evidence in the record as a whole supports it.  See Roberts v. Apfel,

222 F.3d 466, 468 (8th Cir. 2000).  Substantial evidence is less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a conclusion.  See Kelley v.

Callahan, 133 F.3d 583, 587 (8th Cir. 1998).  If, after review, it is possible to draw two

inconsistent positions from the evidence and one of those positions represents the Commissioner's

findings, the denial of benefits must be upheld.  See Robinson v. Sullivan, 956 F.2d 836, 838 (8th

Cir. 1992).  The reviewing court, however, must consider both evidence that supports and

evidence that detracts from the Commissioner's decision.  See Johnson v. Chater, 87 F.3d 1015,

1017 (8th Cir. 1996).  "[T]he court must also take into consideration the weight of the evidence

in the record and apply a balancing test to evidence which is contrary."  Burress v. Apfel, 141

F.3d 875, 878 (8th Cir. 1998).  The analysis required has been described as a "searching inquiry."

Id.

### B.    The Determination of Disability

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or has lasted or can be expected to last for a continuous period of

not less than 12 months."  42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a).  The claimant

has the burden of proving that s/he has a disabling impairment.  See Ingram v. Chater, 107 F.3d

598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998).  First, it is determined whether the claimant is currently engaged in "substantial gainful employment."  If the claimant is, disability benefits must be denied. See 20 C.F.R. §§ 404.1520, 416.920 (b).  Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments.  See 20 C.F.R §§ 404.1520 (c), 416.920 (c).  To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities."  Id.  Age, education and work experience of a claimant are not considered in making the "severity" determination.  See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  This listing is found in Appendix One to 20 C.F.R. 404.  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work.  See 20 C.F.R. § 404.1520 (e), 416.920 (e).  If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled.  See id.  If the

claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if s/he is not able to perform any other work. See id. Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

## C.     Plaintiff's Claims

Plaintiff first argues that the ALJ erred in failing to address plaintiff's COPD. Plaintiff next argues that the Appeals Council erred in evaluating the opinion of consulting physician Dr. Enkvetchakul. Plaintiff finally argues that the Appeals Council erred in relying on the medical-vocational guidelines. The undersigned will discuss plaintiff's claims in turn, beginning with the Appeals Council's evaluation of Dr. Enkvetchakul's opinion.

## 1.     Dr. Enkvetchakul's Opinion

Plaintiff argues that the Appeals Council erred in substituting its own opinion for that of Dr. Enkvetchakul. Specifically, plaintiff contends that the Appeals Council erred in determining that plaintiff did not require the use of a cane. Defendant argues that the Appeals Council properly rejected a portion of Dr. Enkvetchakul's opinion that was not supported by the record.

Plaintiff saw Dr. Enkvetchakul for a consultative examination on March 9, 2009. Dr. Enkvetchakul completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which he expressed the opinion that plaintiff could continuously lift and carry twenty

pounds, frequently lift and carry fifty pounds, and occasionally lift and carry one hundred pounds. (Tr. 251). Dr. Enkvetchakul found that plaintiff had no limitations in his ability to sit, stand, or walk. (Tr. 252). Dr. Enkvetchakul checked a box indicating that plaintiff required the use of a cane to ambulate, although he did not complete the remainder of the assessment regarding plaintiff's use of a cane. (Id.). Dr. Enkvetchakul found that plaintiff should reach overhead with right hand and climb ladders or scaffolds only occasionally. (Tr. 253).

The ALJ incorporated Dr. Enkvetchakul's findings in his RFC, including plaintiff's need to use a cane for ambulation. (Tr. 51). The Appeals Council, however, found that Dr. Enkvetchakul's finding that plaintiff required a cane to ambulate was inconsistent with the rest of Dr. Enkvetchakul's assessment and the other medical evidence in the record. (Tr. 5). The Appeals Council stated that the need for a cane is at odds with the ability to carry 21-50 pounds frequently and 51-100 pounds occasionally, as well as Dr. Enkvetchakul's statements that plaintiff does not have significant limitations. (Id.). The Appeals Council noted that there is no evidence in the record that a cane is medically necessary. (Id.). Finally, the Appeals Council pointed out that there was no prescription for a cane, and no evidence of a gait disturbance that would make a cane necessary. (Id.).

In analyzing medical evidence, "[i]t is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'" Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (quoting Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995)). The ALJ is to consider the nature and extent of the examining/treatment relationship, the supportability of the opinion, the consistency of the opinion with the rest of the record, and the specialization of the medical source. 20 C.F.R. § 404.1527(d). The ALJ is to give a treating medical source's opinion on the issues of

- 16 -

the nature and severity of an impairment controlling weight if such opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. A treating physician's opinion that is inconsistent with the physician's own treatment notes need not be credited by an ALJ. Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001). "The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).

The undersigned finds that the Appeals Council's evaluation of Dr. Enkvetchakul's opinion is supported by substantial evidence. In his narrative report, Dr. Enkvetchakul stated that he was unable to find any significant evidence of severe pathology on examination, and noted that there was some evidence of symptom magnification. (Tr. 258). Dr. Enkvetchakul found that there was little objective evidence for significant work restrictions. (Id.). He found that plaintiff had no restrictions in standing, walking, or carrying. (Id.). Plaintiff points out that Dr. Enkvetchakul noted that plaintiff walked with a slight limp. Dr. Enkvetchakul, however, made no mention of a cane in his report. Further, although Dr. Enkvetchakul checked the box indicating that plaintiff needed a cane, he did not complete the remainder of the form regarding plaintiff's need for a cane. As such, the Appeals Council properly found that Dr. Enkvetchakul's opinion that plaintiff required a cane for ambulation was inconsistent with his own report.

The remainder of the record is also inconsistent with the need to use a cane. There is no evidence that any doctor ever prescribed a cane or found that it was medically necessary. Dr. Enkvetchakul was not a treating physician, but rather, was a consulting physician who saw plaintiff on only one occasion. As such, the Appeals Council's decision to reject Dr.

Enkvetchakul's opinion that plaintiff required a cane for ambulation is supported by substantial evidence.

## 2. Plaintiff's COPD

Plaintiff contends that the ALJ erred in failing to evaluate plaintiff's COPD. Plaintiff argues that, in failing to include any evaluation of this impairment, the ALJ did not fulfill his duty to develop the record. Defendant contends that plaintiff's COPD was not severe and plaintiff was not prejudiced by the ALJ's failure to further develop the record with regard to plaintiff's COPD.

Step two of the five-step evaluation provides that a claimant is not disabled if her impairments are not "severe," and have lasted or are expected to last for at least 12 months. 20 C.F.R. § 416.920(a)(4)(ii); § 416.909 (duration requirement). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007) (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). It is the claimant's burden to establish that his impairment or combination of impairments are severe. Id. "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard." Id. at 708 (citations omitted).

"[T]he administrative hearing is not adversarial in nature, and the ALJ has a duty to develop facts fully and fairly, especially in a case where the claimant is not represented by counsel." Reeder v. Apfel, 214 F.3d 984, 987 (8th Cir. 2000). An ALJ, however, "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Thus, an absence of counsel "does not in itself deprive a claimant of a fair hearing." Mitchell v. Shalala, 25 F.3d 712,

714 (8th Cir. 1994). The Eighth Circuit Court of Appeals has held that lack of counsel does not affect the validity of an administrative hearing "unless the claimant demonstrates prejudice or unfairness in the proceeding." Heisner v. Secretary of Health, Ed. and Welfare, 538 F.2d 1329, 1331 (8th Cir. 1976). See Cruise v. Harris, 510 F. Supp. 534, 535 n. 2 (W.D. Mo. 1981).

In this case, plaintiff testified at the hearing that he had recently been diagnosed with COPD, and was taking breathing treatments. (Tr. 39). Plaintiff stated that he had experienced difficulty breathing for "quite some time." (Id.). Plaintiff also indicated that his COPD was unrelated to his previous rib injuries. (Id.).

The medical record reveals that plaintiff was diagnosed with COPD by a nurse practitioner at the VA in November of 2007. (Tr. 240). Plaintiff underwent chest x-rays in December of 2007 due to complaints of increased coughing. (Tr. 222). The x-rays revealed changes of hyperaeration. (Id.). Plaintiff also underwent pulmonary function testing, which revealed mild obstruction. (Tr. 244). Plaintiff complained of a cough again in February of 2008, and was diagnosed with COPD. (Tr. 233). Plaintiff was prescribed Combivent, and was instructed to quit smoking. (Tr. 234). Plaintiff underwent a rheumatology consult in July 2008, at which time it was noted by the examining physician that plaintiff had a history of COPD, and that plaintiff had complaints of cough and shortness of breath. (Tr. 247). It was also noted that plaintiff was using a Combivent inhaler. (Id.). Finally, Dr. Enkvetchakul noted that plaintiff had recently been diagnosed with COPD, and had started using an inhaler. (Tr. 257).

The undersigned finds that the ALJ erred in failing to evaluate plaintiff's COPD. Plaintiff testified at the administrative hearing that he had recently been diagnosed with COPD, and that he was using an inhaler. Plaintiff's VA medical records confirm this. The record reveals that

plaintiff complained of coughing and shortness of breath. Objective testing performed at the VA, including a chest x-ray and pulmonary function testing, revealed findings consistent with COPD. The ALJ, however, provided no discussion of plaintiff's COPD. The ALJ's duty to develop the record was heightened in this case, in which plaintiff was not represented at the hearing. See Reeder, 214 F.3d at 987.

Defendant argues that plaintiff was not prejudiced by the ALJ's failure to develop the record with regard to plaintiff's COPD as there is no evidence that plaintiff's COPD resulted in any limitations. No physician, however, was asked to express an opinion regarding limitations resulting from plaintiff's COPD. Further, even if plaintiff's COPD is found to be non-severe, any limitations resulting from plaintiff's COPD should be considered when determining plaintiff's RFC. See 20 C.F.R. §§ 404.1545, 416.945. Plaintiff's COPD could reasonably be expected to result in some work-related limitations, such as exertional limitations or environmental limitations. The severity of plaintiff's COPD, however, is unknown based upon the minimal evidence included in the record. As such, it cannot be said that plaintiff was not prejudiced by the ALJ's failure to develop the record regarding plaintiff's COPD.

**3.      Medical-Vocational Guidelines**

Plaintiff lastly argues that the Appeals Council erred by using the Medical-Vocational Guidelines instead of obtaining vocational expert testimony because plaintiff has significant non-exertional impairments. Specifically, plaintiff argues that the Appeals Council found that plaintiff was limited in his ability to reach overhead with the right upper extremity, and in his ability to climb ladders and scaffolds. Defendant contends that plaintiff's nonexertional limitations do not prevent him from performing the full range of work contemplated by the Guidelines.

As set forth above, once a claimant establishes that he or she is unable to return to past relevant work, the final step in the sequential process requires a determination of whether a claimant can perform other work in the national economy. "If an applicant's impairments are exertional, (affecting the ability to perform physical labor), the Commissioner may carry this burden by referring to the Medical-Vocational Guidelines or 'Grids,' which are fact-based generalization[s] about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment." Gray v. Apfel, 192 F.3d 799, 802 (8th Cir. 1999) (quotation omitted). Use of the guidelines is permissible only if the claimant's characteristics match those contained in grids and only if the claimant does not have non-exertional impairments. See Foreman v. Callahan, 122 F.3d 24, 25 (8th Cir. 1997).

"If nonexertional impairments exist that limit the claimant's ability to perform the full range of work in a particular category, then the ALJ cannot rely exclusively on the grids to determine disability but must consider vocational expert testimony." Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995). On the other hand, "[i]f the claimant's characteristics do not differ significantly from those contemplated in the Medical-Vocational Guidelines, the ALJ may rely on the Guidelines alone to direct a finding of disabled or not disabled." Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997). Moreover, "'an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines.'" Lucy, 113 F.3d at 908 (quoting Thompson v. Bowen, 850 F.2d 346, 349-50 (8th Cir. 1988)).

In this case, the Appeals Council found that plaintiff had the RFC to lift twenty-five pounds occasionally and fifty pounds frequently, walk and stand six hours out of an eight-hour workday, sit without limitation, only occasionally reach overhead with the right upper extremity, and only occasionally climb ladders or scaffolds. (Tr. 6). The Appeals Council found that plaintiff had the capacity to perform the full range of medium work, and that the medical-vocational guidelines therefore directed a conclusion of not disabled. (Id.).

As noted above, the Appeals Council found that plaintiff was limited in his ability to reach overhead with the right upper extremity, and climb ladders and scaffolds. (Id.). These are nonexertional limitations. Defendant contends that these nonexertional limitations do not significantly limit plaintiff's capacity to perform the full range of medium work. Defendant points out that Social Security Ruling 83-14 states that limitations in climbing ladders and scaffolds would not significantly affect the occupational base. See SSR 83-14. Defendant, however, also acknowledges that SSR 85-15 provides that limitations in reaching or handling "may eliminate a large number of occupations a person could otherwise do," but that "[v]arying degrees of limitations would have different effects, and the assistance of a [vocational expert] may be needed to determine the effects of the limitations." See SSR 85-15. Defendant requests that, if the court finds that the Appeals Council's assessment is not supported by substantial evidence, the case be remanded for further consideration.

The undersigned finds that the Appeals Council's failure to elicit testimony from a vocational expert was error. The Appeals Council found that plaintiff had multiple nonexertional limitations. As such, plaintiff cannot perform the full range of medium work. The assistance of a vocational expert was required in this case to determine the effect of plaintiff's nonexertional

limitations on plaintiff's ability to perform medium work. The ALJ's finding that plaintiff was able to perform other work existing in significant numbers in the national economy in spite of his nonexertional impairments thus "invaded the province of the vocational expert" and was improper. Foreman, 122 F.3d at 26 (quoting Sanders v. Sullivan, 983 F.2d 822, 824 (8th Cir. 1992)).

## Conclusion

In sum, the undersigned finds that the ALJ erred in failing to develop the record regarding plaintiff's COPD. In addition, the Appeals Council erred in failing to obtain vocational expert testimony to assess the effect of plaintiff's nonexertional limitations. As such, this cause will be reversed and remanded to the ALJ in order for the ALJ to properly develop the record with regard to plaintiff's COPD; reassess plaintiff's residual functional capacity based on the developed record; and obtain vocational expert testimony to determine the effect of plaintiff's nonexertional impairments on the occupational base. Accordingly, a Judgment of Reversal and Remand will be entered separately in favor of plaintiff in accordance with this Memorandum.


Dated this 12th day of September, 2012.


_Lewis M. Blanton_
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE